```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                     :
JAIME RODRIGUEZ,                     :
                                     :
         Plaintiff,                  :    Civ. No. 15-7980 (NLH)
                                     :
    v.                               :    OPINION
                                     :
DEREK HAMEL,                         :
                                     :
         Defendant.                  :
_____:

APPEARANCES:
Jaime Rodriguez, #34911-054
FCI Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640
    Plaintiff Pro se

Plaintiff Jaime Rodriguez, an inmate currently confined at the Federal Correctional Institution ("FCI") in Fort Dix, New Jersey, brings this civil rights action pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). (ECF No. 1). On November 13, 2015, this Court granted Plaintiff leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. (ECF No. 3).

At this time the Court must review the instant Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in

forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).  For the reasons set forth below, the Complaint will be DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.

I.   BACKGROUND

Plaintiff explains that he was previously housed in Unit 5841, which he states is an Admission and Orientation ("A&O") unit used to receive new inmate arrivals until they receive their permanent assigned units. (Compl. 5-6, ECF No. 1). Plaintiff states that he was "primarily assigned, among other A&O duties, as an orderly to maintain the third floor bathroom." (Compl. 6, ECF No. 1).[1]

---

[1] The Court notes that in the Complaint Plaintiff provides factual allegations explaining his role in assisting another inmate who is blind, Matthew Weigman.  Specifically, Plaintiff states that he assisted inmate Weigman in traversing the prison to attend classes, meals, or medical call-outs; and also that he helped prepare written documents for inmate Weigman. (Compl. 6, ECF No. 1).  Further, Plaintiff devotes a significant portion of the Complaint to describing Defendant Derek Hamel's duties and history as a counselor in A&O Unit 5841, (Compl. 7-8, ECF No. 1), and to describing the problems that ensued when the MP3 (digital music player) charging station was removed from the unit (Compl. 8-10, ECF No. 1).  The Court does not address these allegations here because they are not relevant to the claim Plaintiff raises in his Complaint — which is that Plaintiff was retaliated against by Defendant Hamel for engaging in the prison grievance process.

In relevant part, Plaintiff explains that "on March 11, 2015, because of a chicken pox outbreak in the institution[,] any inmates that had never contracted and had not been vaccinated for the disease were quarantined on the third floor of Unit 5841." (Compl. 11, ECF No. 1).  Plaintiff further states that "[a]ll inmates that had been housed on that floor were moved." (Id.).  As a result, Plaintiff was moved from his housing unit on the third floor to a 12-man cell on the second floor.[2]

A Town Hall meeting[3] for Plaintiff's unit was held the following day, March 12, 2015, to discuss an issue regarding a missing MP3 (digital music player) charging station.  At the conclusion of the meeting, Plaintiff asked Defendant Hamel for four BP-8 grievance forms. (Compl. 12, ECF No. 1).  Defendant Hamel instructed Plaintiff to get the BP-8 forms from the Unit Team at Unit 5851.  On Sunday, March 15, 2015, Plaintiff alleges

---

[2] Plaintiff does not specify in the Complaint what type of unit he was housed in prior to being moved in response to the chicken pox quarantine (i.e., single cell, double cell, etc.).  However, in a BOP response to one of Plaintiff's BP-8 grievance forms, Counselor Hamel explains that Plaintiff was moved from "a one man room to a twelve man room" as a result of the chicken pox outbreak. (Compl. 23, BP-8 Resp., ECF No. 1).  Therefore, it appears that, prior to the chicken pox quarantine, Plaintiff was housed in a single-man cell.

[3] Plaintiff explains that a "Town Hall" meeting is a meeting conducted by BOP staff to make announcements, or to discuss changes in policy or procedures with inmates. (Compl. 5, ECF No. 1).

that Defendant Hamel moved Plaintiff from the 12 man cell in Unit 5841 to another 12 man cell in Unit 5851.  The Unit 5841 intake clerk also notified Plaintiff "of the loss of job and change of housing." (Compl. 12, ECF No. 1).  Within days after his move to a 12-man cell in Unit 5851, Plaintiff was moved to a 2-man cell in the same unit.  "Plaintiff was thereafter assigned to an orderly position in Unit 5851." (Compl. 13, ECF No. 1).

Plaintiff asserts that he was not provided with any prior notice of, or a reason for, his job and housing change.  He contends that he committed no infraction, and was not subject to any disciplinary process which would warrant the sanction of a loss of a job or a change in housing. (Compl. 12, ECF No. 1). Plaintiff filed administrative grievances with respect to his change of housing and job.[4]  Specifically, he alleged that he was improperly sanctioned in retaliation for the fact that he pursued his administrative grievances. (Compl. 21-22, BP-8, ECF No. 1).  Plaintiff states that these grievances were rejected. Accordingly, he filed the instant civil action.

In his Complaint, Plaintiff alleges that Defendant Hamel "knowingly, willfully, intentionally and maliciously fired

---

[4] Plaintiff also describes, in detail, the administrative grievances that he helped to prepare and file on behalf of inmate Weigman. (Compl. 13-16, ECF No. 1).  However, because the factual allegations regarding inmate Weigman have no bearing on Plaintiff's claim for retaliation against Defendant Hamel, they will not be discussed in this Opinion.

Plaintiff and changed Plaintiff's housing in direct response to, and in violation of, Plaintiff's exercise of his Constitutional First Amendment right to petition the Government for a redress of grievances." (Compl. 16, ECF No. 1).  As relief, Plaintiff seeks monetary damages and a declaratory judgment.

## II.   STANDARD OF REVIEW

### A. Sua Sponte Dismissal

Every complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do ... . Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

That is, a complaint must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570.  "A

5

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  The determination of whether the factual allegations plausibly give rise to an entitlement to relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (citations omitted). Thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citations omitted).

In determining the sufficiency of a pro se complaint, the Court must be mindful to accept its factual allegations as true, see James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012), and to construe it liberally in favor of the plaintiff, see Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

In general, where a complaint subject to statutory screening can be remedied by amendment, a district court should not dismiss the complaint with prejudice, but should permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson

6

v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (noting that leave to amend should be granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment"), cited in Thomaston v. Meyer, 519 F. App'x 118, 120 n.2 (3d Cir. 2013); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

   B. Bivens Actions

   In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and the Fifth Amendment, see Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).  But "the absence of statutory relief for a constitutional violation does not necessarily mean that courts should create a damages remedy against the officer responsible for the violation." Schreiber v. Mastrogiovanni, 214 F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

   Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal

7

constitutional or statutory rights. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049, 125 S.Ct. 868, 160 L.Ed.2d 769 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits. See Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987).

In order to state a claim under Bivens, a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. See Couden v. Duffy, 446 F.3d 483, 491 (3d Cir. 2006) (stating that under Section 1983 "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that Bivens held that a parallel right exists against federal officials); see also Correctional Services Corp. v. Malesko, 534 U.S. 61, 66 (2001).

C. Retaliation

The Third Circuit Court of Appeals has held that:

> [r]etaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. See, e.g., Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003); Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229 F.3d 220, 224-26 (3d

8

> Cir. 2000).  To state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of the prison officials"; and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. <u>Rauser</u>, 241 F.3d at 333.

<u>Bistrian</u>, 696 F.3d at 376 (footnote omitted); <u>see also</u> <u>Chavarriaga v. New Jersey Dep't of Corr.</u>, 806 F.3d 210, 233 (3d Cir. 2015).

### III. <u>DISCUSSION</u>

Here, Plaintiff asserts that Defendant Hamel retaliated against him for exercising his Constitutional First Amendment right.  Because this Court determines that the allegations of the Complaint fail to set forth a claim for retaliation, the Complaint will be dismissed without prejudice.

A. <u>Constitutionally protected conduct</u>

The Court notes that filing grievances can be constitutionally protected conduct. <u>See</u> <u>Bullock v. Buck</u>, 611 F. App'x 744, 747 (3d Cir. 2015).  Based on the facts alleged in the Complaint, however, it appears that the allegedly adverse action — the job and housing change — occurred before Plaintiff actually filed any administrative grievances.  Specifically, Plaintiff states that he was transferred and lost his job on March 15, 2015 (Compl. 12, ECF No. 1), and Plaintiff's BP-8 grievance form is dated two days later, March 17, 2015 (Compl.

21, BP-8, ECF No. 1). See Faruq v. McCollum, 545 F. App'x 84, 88 (3d Cir. 2013) (affirming district court's sua sponte dismissal of retaliation claims at the screening stage because the alleged adverse action occurred before plaintiff ever filed his administrative remedy).

However, Plaintiff clarifies in the body of his Complaint that he was retaliated against for simply requesting administrative grievance forms; namely, for asking for four BP-8 forms at the March 12, 2015 Town Hall meeting. (Compl. 12, ECF No. 1). Therefore, the Court assumes for purposes of this Opinion, without finding, that Plaintiff was engaged in constitutionally protected activity and, thus, has satisfied the first prong of a retaliation claim.

Nevertheless, the Court finds that the Complaint, as plead, fails to allege facts sufficient to satisfy the second prong of a claim for retaliation.

### A. Adverse Action

An action is sufficiently adverse to support a claim for retaliation if it "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Rauser, 241 F.3d at 333 (quoting Allah, 229 F.3d at 225). The alleged adverse action described by Plaintiff in this case was the change in his job and in his housing assignment.

10

    1. <u>Change in housing</u>

With respect to housing, Plaintiff does not object to the fact that his entire assigned unit was initially moved from the single-man cell in Unit 5841 to the 12-man cell on the second floor. In fact, Plaintiff concedes that this move was due to the chicken pox quarantine. (Compl. 11, ECF No. 1). Therefore, the Court construes Plaintiff's claim as a challenge to the housing change from the 12-man cell in Unit 5841 to the 12-man cell in Unit 5851, and ultimately to the 2-man cell in Unit 5851. (Compl. 12, 13, ECF No. 1). This conclusion is further supported by the BP-8 Plaintiff attaches to his Complaint in which he complains that "there were a minimum of two empty beds still available in the very [12-man room in Unit 5841] I was housed in." (Compl. 22, BP-8, ECF No. 1).

As an initial matter, prisoners have no inherent constitutional right to placement in any particular prison, to any security classification, or to any particular housing assignment. <u>See</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Therefore, in general, a transfer from one cell or bunk assignment to another is insufficient to deter a person of ordinary firmness from exercising his constitutional rights. <u>See, e.g.</u>, <u>Smith v. Hayman</u>, No. 09-2602, 2012 WL 1079634, at *21 (D.N.J. Mar. 30,

2012) aff'd, 489 F. App'x 544 (3d Cir. 2012) ("Because Smith has no protected constitutional right to a housing assignment, he cannot claim 'adverse action' when his housing assignment was changed."); Manning v. Flock, No. 1:11-CV-0293, 2012 WL 1078227, at *11 (M.D. Pa. Mar. 30, 2012). Rather, a plaintiff must allege that the impact of the housing change was sufficiently negative so as to constitute an adverse action. See, e.g., Bistrian, 696 F.3d at 376 (holding that conditions of confinement in a particular prison housing unit may deter a person of ordinary firmness from exercising his First Amendment rights); Allah, 229 F.3d at 225 (same).

In this case, the factual allegations of the Complaint do not establish that the change in Plaintiff's housing assignment — from a 12 man room in Unit 5841 to, ultimately, a 2 man cell in Unit 5851 — was an adverse action. See, e.g., Verbanik v. Harlow, 512 F. App'x 120, 122 (3d Cir. 2013) (affirming district court's determination that plaintiff did not demonstrate that the living conditions he endured constituted an adverse action). Plaintiff's vague label of the housing in Unit 5841 as "privileged" does not sufficiently explain why a transfer to Unit 5851 had such a negative impact as to amount to an adverse action.[5] Id. Further, even assuming that Plaintiff's claim

---

[5] The Court notes that Plaintiff describes the hardships that inmate Weigman, a blind man, endured as the result of being

12

relates to his transfer from his initial single cell in Unit 5841 to the double cell in Unit 5851, courts in this district have determined that such a change does not constitute an adverse action. See Smith, No. 09-2602, 2012 WL 1079634, at *21 (citations omitted) (change in plaintiff's housing assignment from single cell to double cell fails to demonstrate sufficiently adverse action against plaintiff in violation of his constitutional rights).  Without more, the Complaint fails to establish that Plaintiff's housing transfer constituted an adverse action.

    2. Change in job

Similarly, an inmate does not have a constitutionally protected interest in a prison job assignment. James v. Quinlan, 866 F.2d 627, 629–30 (3d Cir. 1989).  Thus, in general, a change in job assignment or loss of a job will not be sufficient to establish an adverse action because it would be insufficient to deter a person of ordinary firmness from exercising his constitutional rights. See, e.g., Manning, No. 1:11-CV-0293, 2012 WL 1078227, at *11.

---

transferred.  While this Court makes no determination as to whether the challenges inmate Weigman encountered were sufficiently negative such that his transfer constituted an adverse action, the Court takes this opportunity to inform Plaintiff that the allegations regarding the housing transfer's impact on inmate Weigman do not establish that the housing transfer, as applied to Plaintiff, had a sufficiently negative impact to support a claim for retaliation.

Moreover, in this case, Plaintiff's job was changed from an orderly assigned to the third floor bathroom in Unit 5841, to an orderly position in Unit 5851. (Compl. 12, 13, ECF No. 1). Plaintiff has not explained how, or if, his job as an orderly in Unit 5851 differs from, or is worse than, his job as an orderly in Unit 5841. See Fiore v. Holt, 435 F. App'x 63, 68 (3d Cir. 2011) (finding no basis to conclude that the position to which he was transferred was less preferable than his prior job); see also McKinnon v. Gonzales, 642 F. Supp. 2d 410, 430 n.22 (D.N.J. 2009) (in employment context finding that "[b]eing asked to perform the same duties in a different unit — particularly in the absence of any suggestion that Unit Two was an undesirable unit like Unit Three — is not a materially adverse action."). Therefore, the allegations of the Complaint fail to establish that this job change constitutes an adverse action.

B. Substantial and motivating factor

Because Plaintiff has failed to plead an adverse action — and, thus, has not set forth a claim for retaliation — the Court need not reach the third prong of a claim for retaliation, and makes no determination as to whether Plaintiff has pled the existence of a casual link between Plaintiff's request for the BP-8 forms and the housing transfer and job change. See Faruq, 545 F. App'x at 88 (citing Mitchell, 318 F.3d at 530); Rauser, 241 F.3d at 333.

14

IV.   CONCLUSION

For the foregoing reasons, this Court finds that Plaintiff has failed to plead facts that establish an adverse action and, as a result, has failed to set forth a claim for retaliation. Accordingly, the Complaint will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim for retaliation under Bivens, the Court will grant Plaintiff leave to file an application to re-open accompanied by a proposed amended complaint.[6]  See Denton, 504 U.S. 25; Grayson, 293 F.3d 103.

An appropriate Order follows.

_s/ Noel L. Hillman_____
NOEL L. HILLMAN
United States District Judge

Dated: April 8, 2016
At Camden, New Jersey

---

[6] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading. See West Run Student Housing Associates, LLC v. Huntington National Bank, 712 F.3d 165, 171 (3d Cir. 2013) (collecting cases). See also 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. 2008). To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself. Id.